RAHLES, Respondent, vs. J. THOMPSON & SONS MANUFACTURING COMPANY, Appellant.

*October 22, 1908—January 26, 1909.*

*Pleading: Amendment on trial: Continuance: Discretion: Argument of counsel: Master and servant: Negligence: Injuries to servant: Inexperienced servant: Failure to instruct or warn: Obvious dangers: Appeal and error: Review: Appearance and manner of witnesses: Attorneys: Disrespectful arguments.*

1. In an action for personal injuries the defendant's negligence, by the allegations of the complaint, was predicated upon defects in the machine in which plaintiff was injured. On the trial no defect in the machine was shown, and at the close of plaintiff's evidence, defendant having moved that the plaintiff be nonsuited, plaintiff asked leave to amend his complaint, presenting an amended complaint, which was the same as the original complaint except that therein the negligence of defendant was predicated upon the ignorance and inexperience of the plaintiff, known to the defendant, and the failure of the defendant to instruct or warn the plaintiff before or at the time of placing plaintiff to work. *Held,* that it was proper to allow such amendment on the trial and there was no error in such ruling.

2. In such case it is not error to refuse a continuance of the case

Rahles v. J. Thompson & Sons Mfg. Co. 137 Wis. 506.

over the term, where there is no showing, either by an affidavit or by a statement to the court based on the pleadings apparently supporting such statement, that the defendant was unprepared to meet and could not, with the evidence at hand or available, meet the issues raised by the amended complaint.

3. The terms on which amendment of pleadings during the trial, which bring about no radical change of the issues, may be allowed, are in the discretion of the court.

4. Error assigned to arguments of counsel, stated in the opinion, is *held* to be too critical.

5. In an action by an adult servant for personal injuries, alleged to have followed upon the failure of the master to instruct and warn the plaintiff before or at the time of placing him to work, under the evidence, stated in the opinion, it is *held* that the master was justified in presuming that the servant was an inexperienced adult of ordinary intelligence, and hence that his duty to instruct or warn was only that which the law imposed upon him with respect to any ordinarily intelligent but inexperienced adult servant.

6. In an action by a servant for personal injuries, alleged to have been caused by the servant's coming in contact with a treadle and thereby releasing a drop hammer under which the servant was at work with his hands, the negligence of defendant was predicated on failure to warn or instruct the plaintiff before or at the time of placing him at work. The servant was of ordinary intelligence but inexperienced. *Held*, that the master was not by law required to explain or instruct against such obvious danger, nor with reference to such obvious function of the treadle, nor to anticipate that the servant was ignorant of the existence, or of the function, of the treadle of such a machine which the servant could plainly see in operation.

7. In such case it is *held* that no negligence of the master causing the injury complained of was shown by his omission to caution or instruct the servant.

8. While the appearance and manner of a witness is of importance in the consideration of the issue as to the intelligence of a party when taken in connection with other evidence affecting his credibility or his physical or mental condition, yet standing alone, or existing in connection with evidence which *prima facie* shows ordinary intelligence, appearance and manner alone cannot be invoked to sustain a verdict based on a conclusion that the party was not of ordinary intelligence.

9. Language of counsel in a brief for a rehearing, stated in the opinion, is *held* disrespectful and in violation of Supreme Court Rule 51.

APPEAL from a judgment of the circuit court for Rock
county: GEORGE GRIMM, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Charles A. Vilas,*
attorney, and *Robert N. McMynn,* of counsel, and oral argu-
ment by *Mr. McMynn.*

Among other references upon the part of the appellant
were the following: *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis.
277, 71 N. W. 434; *Odegard v. North Wis. L. Co.* 130 Wis.
659, 110 N. W. 809; *Malloy v. C. & N. W. R. Co.* 109 Wis.
29, 85 N. W. 130; *Meisenheimer v. Kellogg,* 106 Wis. 30,
81 N. W. 1033; *Cole v. C, & N. W. R. Co.* 71 Wis. 114, 37
N. W. 84; *Wagner v. Plano Mfg. Co.* 110 Wis. 48, 85 N.
W. 643; *Dougherty v. West Sup. I. & S. Co.* 88 Wis. 343, 60
N. W. 274; *Dahlke v. Ill. S. Co.* 100 Wis. 431, 76 N. W.
362; *Gereg v. Milwaukee G. L. Co.* 128 Wis. 35, 107 N. W.
289; *Grams v. C. Reiss C. Co.* 125 Wis. 1, 102 N. W. 586;
*Stutz v. Armour,* 84 Wis. 623, 54 N. W. 1000; *Ralph v. C.
& N. W. R. Co.* 32 Wis. 177; *Sobey v. Thomas,* 39 Wis.
317; *Hinton v. Cream City R. Co.* 65 Wis. 323, 27 N. W.
147; *Smith v. Milwaukee B. & T. Exch.* 91 Wis. 360, 64 N.
W. 1041.

For the respondent there was a brief by *John L. Fisher,*
attorney, and *O. A. Oestreich,* of counsel, and oral argument
by *Mr. Oestreich.*

Among other references upon the part of the respondent
were the following: Sec. 2669, Stats. (1898); *Hopkins v.
C., M. & St. P. R. Co.* 128 Wis. 403, 107 N. W. 330; sec.
2830, Stats. (1898); ch. 307, Laws of 1899; *McIlquham v.
Barber,* 83 Wis. 500, 53 N. W. 902; *Johnson v. Ashland W.
Co.* 71 Wis. 553, 37 N. W. 823; *Cobb v. Simon,* 119 Wis.
597, 97 N. W. 276; *Wolski v. Knapp-Stout & Co. Co.* 90
Wis. 178, 63 N. W. 87; *Neilon v. Marinette & M. P. Co.*
75 Wis. 579, 44 N. W. 772; *Nadau v. White River L. Co.*
76 Wis. 120, 43 N. W. 1135; *Yess v. Chicago B. Co.* 124
Wis. 406, 102 N. W. 932; *Gussart v. Greenleaf S. Co.* 134

Wis. 418, 114 N. W. 799; *Dwyer v. Am. Exp. Co.* 82 Wis. 307, 52 N. W. 304; *Wysocki v. Wis. L. I. & C. Co.* 121 Wis. 96, 98 N. W. 950; *McMahon v. Ida M. Co.* 95 Wis. 308, 70 N. W. 478; *Thompson v. C., M. & St. P. R. Co.* 14 Fed. 564; *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 111 N. W. 694; *Friemark v. Rosenkrans,* 81 Wis. 359, 51 N. W. 557.

The following opinion was filed November 10, 1908:

TIMLIN, J. The original complaint was quite inartistic. But after setting forth the age, nationality, and occupation of the plaintiff and his lack of knowledge of the English language and the corporate character and the business of the defendant, it averred lack of knowledge of machinery and of the dangers attending its operation and lack of experience on the part of the plaintiff. Defendant had and used a described drop hammer, out of repair and defective. Defendant, knowing the plaintiff's want of experience, and without instructing the plaintiff concerning his duties except as specified, and without warning the plaintiff that there was any danger in working about the drop hammer or that it was liable to fall, ordered the plaintiff to assist the operator of the drop hammer. Plaintiff, assisting without knowledge of the danger, was injured by the hammer dropping upon his hand, which in consequence of this injury was amputated. That if the said defendant by its officers or agents, its superintendent and foreman acting as vice-principals, had warned or in any manner instructed the plaintiff as to the dangers and the use of the said hammer, the precautions to be taken about the same, plaintiff would not have been injured in any manner and would have avoided the said injury. Again:

"That the cause of the injury to this plaintiff was the neglect of the said defendant . . . to warn the said plaintiff of the dangers and of the dangerous condition of the said machine."

No defect in the machine having been shown, but the evidence on the part of the plaintiff tending to show that the plaintiff accidentally stepped on the treadle of the drop hammer while having his hand in the path of the descending hammer, the defendant at the close of the plaintiff's evidence moved that the plaintiff be nonsuited. Plaintiff then asked leave to amend his complaint, presenting an amended complaint, which is the same as the original complaint except that therein the negligence of the defendant was predicated, not upon any defect in the machine, but upon the ignorance and inexperience of the plaintiff, known to the defendant, and the failure of the defendant to instruct or warn the plaintiff before or at the time of placing plaintiff to work upon the drop hammer. The court allowed this amended complaint to be filed, whereupon counsel for the defendant asked for the "continuance of the case over the term, the immediate taxing by the clerk of this court of the taxable disbursements of the defendant down to this time, and the usual attorney fee of $25. By the Court: The motion is granted upon the sole ground that $10 costs be paid forthwith." Exception to this ruling was taken, and error is assigned on this ruling.

We perceive no error in the ruling. It was proper to allow the amendment on the trial. *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55. Where the complaint is amended on the trial, in order to entitle the defendant to a continuance he must make a showing, if not by affidavit, at least by a statement to the court based on the pleadings apparently supporting such statement, that he is unprepared to meet and cannot, with the evidence at hand or available, meet the issues raised by the amended complaint. *Withee v. Simon,* 104 Wis. 116, 80 N. W. 77. The amendment here brought about no radical change of the issues and the terms were in the discretion of the court. *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 82 N. W. 534; *McIlquham v. Barber,* 83 Wis. 500, 53 N. W. 902; *Pellage v. Pellage,* 32 Wis. 136, 141; *Schaller*

*v. C. & N. W. R. Co.* 97 Wis. 31, 71 N. W. 1042. Neither do we think there was error in the rulings relative to the argument made to the jury by plaintiff's attorney. The attorneys for defendant seem to have been quite critical in this regard. It is too much to expect that in extemporaneous argument to a jury rules of law will always be accurately understood and precisely stated by the speaker, and it is much easier to be critical of, than to be correct in, such statements. All the other errors assigned go to one point, namely: Was there a duty resting upon defendant to warn the plaintiff of the danger of stepping upon or coming in contact with the treadle or pointing out to the plaintiff the treadle and its function and the consequence of pressing down thereon?

The plaintiff was a man grown, twenty-four or twenty-five years of age, a Lithuanian by birth, having little or no knowledge of the English language, and had resided in this country four years, and worked at trucking in the shop in question for about a month prior to his injury. This work included bringing material to this drop hammer and leaving it there to be pressed into shape by the operator of the drop hammer. He had also worked at the back of the drop hammer cleaning up the dies on the afternoon of Saturday and for an hour or two on Monday morning up to the time he was hurt. His place of work was at the back of the drop hammer, and had he remained there he would not have come in contact with the treadle; but he testifies that he was directed to also do such work as he might be directed to do by the operator; that a small piece of iron used in wedging or adjusting the die fell out, as it had done several times before, and that at request of the operator he went around from the back to the front of the drop hammer, put his hand under the upraised hammer to insert this small piece of iron, and while so engaged, with his hand in this position, his foot probably came in contact with the treadle, which caused the hammer to drop on his hand. The treadle was a long bar about four inches from the floor, extending in front of the anvil and

about three inches beyond at each end, and of course was very conspicuous.

The plaintiff was entitled to the rights and subject to the duties of any other adult man.    We cannot presume that because he was born in a foreign country, resided in this country only four years and could not speak English, and was illiterate, he did not possess ordinary common sense and shrewdness or that he falls within the legal rules applicable to children.    The employer was therefore justified in presuming the plaintiff to be an inexperienced adult of ordinary intelligence.    The duty of the employer to instruct or warn such person was only that which the rules of law impose upon him with respect to any ordinarily intelligent but inexperienced adult servant.    This rule has been stated affirmatively as follows:

"The duty of informing the inexperienced employee of the dangers ordinarily incident to the service is upon the employer." *Wolski v. Knapp-Stout & Co. Co.* 90 Wis. 178, 63 N. W. 87.

"If a master employs a servant to do work in a dangerous place, or where the mode of doing the work is dangerous and apparent to a person of capacity and knowledge of the subject, yet if the servant employed to do work of such a dangerous character or in a dangerous place, from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the dangers, it is a breach of duty on the part of the master to expose a servant of such character, even with his own consent, to such dangers, unless he first gives him such instructions or cautions as will enable him to comprehend them and do his work safely, with proper care on his part." *Jones v. Florence M. Co.* 66 Wis. 268, 28 N. W. 207.

The rule as laid down broadly for this state in the foregoing cases is much more favorable to the injured employee than the rule on the subject derived from decisions elsewhere. 1 Labatt, Mast. & Serv. ch. 16.    Negatively it has been said:

"Warning is not required against obvious dangers in ordinary operations which are matters of common knowledge to

all." *Wagner v. Plano Mfg. Co.* 110 Wis. 48, 85 N. W. 643.

"The duty to instruct as between master and servant does not exist as to dangers which are so obvious that the servant must be held as matter of law to be as familiar with them as the master." *Groth v. Thomann.* 110 Wis. 488, 86 N. W. 178.

The master, in order to charge him with this duty, must have known, or ought in the exercise of reasonable care to have known, of the inexperience or lack of knowledge of the servant, and also of the dangerous character of the work. *Klochinski v. Shores L. Co.* 93 Wis. 417, 67 N. W. 934; *Sherman v. Menominee R. L. Co.* 77 Wis. 14, 45 N. W. 1079. The adult employee is presumed to understand the ordinary risks of his employment. *Nash v. C., M. & St. P. R. Co.* 95 Wis. 327, 70 N. W. 293.

"Failure to instruct or warn an employee as to the risks and hazards attending the employment is not negligence, unless the employer knew, or ought to have known, that such warning and instruction was necessary." *Sladky v. Marinette L. Co.* 107 Wis. 250, 83 N. W. 514.

Again:

"The duty to instruct does not go so far as to require the master to acquaint the employee with every possible danger to which he may be subjected in the course of his employment. The master has a right to assume that the servant will see and appreciate those dangers which are open and obvious to a person of ordinary comprehension." *Dahlke v. Ill. S. Co.* 100 Wis. 431, 76 N. W. 362.

To the same effect, *Thompson v. Edward P. Allis Co.* 89 Wis. 523, 62 N. W. 527.

Applying these rules to the case in hand, it is apparent that the defendant had a right to believe that the plaintiff needed no more instruction than any other adult inexperienced person of ordinary intelligence. In the employment and setting to work of such person it would be impossible for the employer to forecast all that might thereafter happen by

reason of accidental contact with machinery which the employee might be occasionally required to approach. Neither can the employer be expected to take the employee through the shop and explain to him the name and obvious function of every piece of machinery like a treadle. Even in agricultural labor, which is by many considered the simplest form of employment, it would require days of tuition to thus explain and instruct regarding every implement and device used or with which the employee might occasionally come in contact, from a cream separator to a threshing machine. The fact that a certain device attached to a drop hammer was a treadle, and that when pressed downward it would release the uplifted hammer, was so obvious and apparent to any person of ordinary intelligence that the omission to instruct, warn, or explain to one not expected to operate that machine or employed for that purpose could not be considered negligence. If this were an omission of duty on the part of the master, it would be hard to say where instruction should stop and what it should include.

The instant case, in its aspect most favorable to the plaintiff, is that the employer directed an adult ordinarily intelligent but inexperienced man to work at the back of the drop hammer cleaning off the dies and anvil, and also to obey the orders of the operator in front of the drop hammer when requested by the latter. The employer failed to instruct the plaintiff as to the identity or the function of the treadle or as to the danger of pressing down upon or coming in contact with the treadle. The plaintiff was called to the front of the drop hammer by the operator of the drop hammer, and while there accidentally touched the treadle with his foot while his hand was under the uplifted hammer, and in this way was injured. The employer was not by law required to explain or instruct against such obvious danger nor with reference to such obvious function of the treadle, nor to anticipate that the servant was ignorant of the existence or of

the function of the treadle of such a machine which the serv-
ant could plainly see in operation, nor was the employer
bound to forecast the possibility of the servant coming
around to the front of the machine and accidentally pressing
upon the treadle with his foot while his hand was under the
uplifted hammer and warn against the consequences.   We
are convinced that under well-settled rules of law no negli-
gence of the master causing the injury complained of was
shown by his omission to caution or instruct the plaintiff in
any of the foregoing particulars, and that consequently the
judgment should be reversed.

*By the Court.*—Judgment reversed, and the cause re-
manded with directions to dismiss the complaint.

The following opinion was filed January 26, 1909:

TIMLIN, J.   The respondent moves for a rehearing, on the
ground that this court erred in holding that upon the issues
made by the pleadings, and evidence in support thereof, the
respondent was a person of ordinary intelligence, and also in
holding that the appellant was authorized to treat the re-
spondent as such person.   Excerpts from the testimony of
the respondent given through an interpreter are presented,
together with the fact that the respondent worked for the ap-
pellant at common labor for two months before he was set to
work at the back of the drop hammer, and we are reminded
that the trial court and the jury had the advantage of seeing
the respondent and hearing him testify.

We have considered these points and find no reason to
alter the former decision.   Taking the testimony of the re-
spondent all together there is to our minds nothing in it to
indicate that he was not of ordinary intelligence.   He stum-
bled in some answers, whether by reason of the difficulty of
rapid and extemporaneous translation into English by the in-
terpreter, or otherwise, we cannot say; but in any event not

more than hundreds of witnesses of ordinary intelligence do in the numerous records which it is part of our duty to examine.   The fact that the trial court heard and saw the witness cannot in such case change our view of the legal effect of the testimony, for we are unwilling to establish a rule that would permit the jury upon the same evidence to give damages to one man and withhold damages from another upon their conclusion from his personal appearance.   The appearance and manner of the witness is of importance in the consideration of questions of fact taken in connection with other evidence affecting his credibility or his physical or mental condition.   But standing alone, or existing in connection with evidence which *prima facie* shows ordinary intelligence, this consideration cannot be invoked to uphold a verdict. But with reference to those persons who require instruction concerning the dangers incident to their work, we notice that there is appended to this brief the name of the same counsel who signed the brief for rehearing in *Lynch v. Ryan,* 132 Wis. 271, 111 N. W. 707, referred to in the opinion upon rehearing, found on pages 277 and 280 (112 N. W. 427).

In the brief of the respondent for rehearing in the instant case we find such expressions as:

"The court deals with the plaintiff as a man made on paper, and in so doing ignores his own positive testimony that he knew nothing of the operation of the machine or the function of the treadle."   "There is no escape from the decision that the finding of the jury of this fact is supported by some credible evidence, except as a preconceived notion of the general merits of the litigation be permitted to control the decision."   "This court must determine the question under an entirely different rule.   It should not utterly disregard the jury's findings, and by assuming the existence of a fact substitute one of its own, as appears to have been done in this case."   "We submit that this decision is unwarranted usurpation by the court of the function of the jury.   This court should not, through a process of designating questions of fact as questions of law, under the guise of correcting errors of law, practically abolish trial by jury in personal injury cases where the gist of the action is negligence."

The counsel for respondent is instructed that this language is in violation of Rule 51 of this court, and that further violations of this rule on his part will not be overlooked. Every person who aspires to practice law should be able to distinguish between argument and mere scolding. Argument is a connected discourse based upon reason; a course of reasoning tending and intended to establish a position and to induce belief. Scolding is mere clamor, railing, personal reproof. Argument dignifies the orator and instructs and convinces the auditor. Scolding relieves somewhat the hysteria of the scolder, but only amuses or irritates the hearer. Argument is the professional weapon of the lawyer; scolding that of the *communis rixatrix.* Argument is enjoyed and welcomed in a brief for rehearing; scolding has no proper place therein.

*By the Court.*—The motion for rehearing is denied, with $25 costs.