GOSPODAR and others, Respondents, vs. MILWAUKEE AUTO-MOBILE INSURANCE COMPANY, Appellant.*

*September 12—October 22, 1946.*

* Motion for rehearing denied, without costs, on December 18, 1946.

For the appellant there were briefs by *Hale, Skemp & Nietsch* of La Crosse, and oral argument by *Quincy H. Hale.*

For the respondents there was a brief by *Stafford & Stafford* and *P. J. Murphy,* all of Chippewa Falls, and oral argument by *Harold E. Stafford.*

BARLOW, J. Appellant's first contention is that there is no evidence of negligence on the part of Clark county snowplow operators. This requires an examination of the facts.

Irene Gospodar, Mary Hebert, and Joyce Borchek were employed in the village of Thorp, and on April 4, 1945, after

their work ended at 5 o'clock in the afternoon, they entered the car of the plaintiff Joyce Borchek and started for their homes in Stanley. They were traveling west on the north side of Highway 29, and when they were about three and one-half miles east of Stanley they met a snowplow traveling east, removing snow from the south side of the highway. The snowplow equipment consisted of a four-wheel-drive truck, a V-shaped snowplow, and snow wings. The snowplow was owned and operated by Clark county.

On the day of the accident it had been snowing off and on during the day, and from six to eight inches of snow had fallen. Prior to the accident, a sweeper had gone over this highway moving the snow to the outside edge of the concrete, the concrete strip being twenty feet in width, and at the point of the accident the south shoulder was approximately five feet in width. Two men operated the snowplow, one driving the truck and the other operating the plow and wings. The plow is attached to the front end of the truck and operates on three runners shaped like a ski, each being about three feet long, curved up at the front, and about three inches in width. Two of the skis are at the outer edge of the plow and the third at the center of the V point of the plow. The wings are separate from the snowplow and are raised or lowered by an hydraulic lift operated from the driver's seat of the truck, but the angle of the wings is changed with a pin, which cannot be done in the cab. The snowplow was set between a half inch and an inch above the surface of the highway, and the wing on the right side of the truck, which was the only one in use, was set four inches above the surface of the highway. The snowplow was traveling east at between seven and eight miles an hour, and moving the ridges of snow off the edge of the concrete. The truck was operated so that the front end of the V point was to the left of the ridge of snow, deflecting the snow

to the right along the plow until it was thrown against the wing, which in turn carried it out onto the shoulder an additional four feet or more. There was no ice or crusted snow on the concrete portion of the highway.

As the car and snowplow equipment were passing, the rear end of the truck skidded north across the center line of the highway, striking the left side of plaintiff's car six to eight inches in front of the windshield, causing it to veer to the left and go off the highway on the south side, causing damages to the plaintiffs in this action. When the truck stopped the right front wheel was off the concrete on the south side of the highway. The frost was out of the shoulder of the highway, and it was soft and muddy.

No question of negligence as to speed, lookout, or position on the highway was submitted to the jury. The only question submitted was management. The jury found that the truck operators were guilty of causal negligence which contributed one hundred per cent to the damages.

Defendant argues that the verdict of the jury is based on conjecture or guess, and therefore cannot be sustained, citing *Walraven v. Sprague, Warner & Co.* (1940) 235 Wis. 259, 266, 292 N. W. 883, and *Klein v. Beeten* (1919), 169 Wis. 385, 389, 172 N. W. 736. It argues that the gouging out of the dirt on the south shoulder of the highway was caused by the snow wing and states that plaintiffs predicate their case on the fact that the right front wheel of the truck went off the concrete onto the shoulder, thus lowering the snowplow and causing the rear end of the truck to skid to the left. Claim is then made that the snow wing is not attached to the snowplow and not a part of it, but is attached to the truck and is controlled from the driver's seat in the truck, and the fact that the right front wheel of the truck may have gone off the concrete could in no way affect the snow wing. It is argued

that the snow wing gouged the dirt on the shoulder and that this must have been caused by its striking some object on the shoulder, and that it could not have been caused by the front wheel of the truck going onto the shoulder. It continues by claiming that no negligence is shown, as negligence is "careless conduct under such circumstances that an ordinarily prudent person would anticipate some injury to another as a reasonable and probable result thereof," citing *Johanson v. Webster Mfg. Co.* (1909) 139 Wis. 181, 120 N. W. 832.

It is conceded that snowplow operators know that where a V plow gouges a shoulder it will cause the truck to skid to the left, and it must follow that when a wing is obstructed it would cause the same result. The driver of the truck and the operator of the snowplow equipment both signed a statement shortly after the accident, in which they said :

"We figure that what happened was that we gave too much room for the oncoming car so that we pulled to the right too far and the outside snow shoe dropped onto the soft shoulder. The wing dug into the shoulder and the rear end of the truck went to the left over the center line of the road. When this happened, I could not manage the car so I could not swing it."

As witnesses for the defendant these parties took the position that only one runner of the snowplow was off the highway, which would not lower the plow as the other two runners on the concrete would carry it at an even height, but on cross-examination admitted that they made the statement hereinbefore set forth as to the cause of the collision, and that it was probably correct. The officer who came to the scene of the accident testified he talked with the operators and examined the conditions as they existed, and concluded that the front wheel of the truck and shoe of the snowplow got onto the shoulder from the cement and caused the wing to lower and

plow into the shoulder, causing the rear end of the truck to slide across the highway in front of plaintiff's car.

It must be remembered this happened in the spring of the year, when the frost was just coming out of the ground, causing the ground to be soft and muddy. It is conceded that the shoulder was gouged by the wing, and the two experienced snowplow operators stated at the time of the accident and shortly thereafter that it was caused by the truck and snowplow going from the concrete to the soft shoulder of the highway. We cannot agree with counsel that they have established to a certainty that the damages were not caused for the reasons that plaintiffs claim they were. There is no evidence that there was a rock or any other obstacle on the shoulder which obstructed the wing. We conclude that the evidence presented a question of fact for the jury, and there is credible evidence to sustain its finding.

Defendant's next contention is that the trial court erred in its instructions to the jury, and quotes a part of the instructions as follows:

"However, the presence of the truck on the wrong side of the road is sufficient proof to constitute negligence in the absence of evidence which satisfies you that the truck was on the wrong side of the road unavoidably or without negligence."

It is contended this instruction applied the rule of *res ipsa loquitur* to this collision and this court has consistently refused to apply that rule to automobile accident cases and particularly to skidding accidents where one of the cars involved was on the wrong side of the road. An examination of the entire instruction shows that the court carefully pointed out that it was necessary for the jury to find that the truck was on the wrong side of the road by reason of negligence of the snowplow operators, and instructed them as to what would constitute such negligence. It is considered that the instruc-

tion was proper and sufficient under *Booth v. Frankenstein* (1932), 209 Wis. 362, 245 N. W. 191, and *Zastrow v. Schaumburger* (1932), 210 Wis. 116, 245 N. W. 202:

Defendant further claims prejudicial error in that defendant offered to prove by several county highway commissioners that the operators of this snowplow equipment were at the time of the accident operating it according to the usual standard of operation in other counties in Wisconsin. The court permitted these witnesses to testify as to how they believed the gouge on the shoulder was caused, and also to testify that they did not believe it could have been caused by the snowplow leaving the concrete. It refused to permit them to testify whether in their opinion there was anything in the conduct of the operators of the truck which would be different from what other county employees would have done under the same circumstances. We are unable to see where expert witnesses could have been helpful to the jury by testifying as to what employees in their counties would have done under the same circumstances. Any jury, and especially a jury in a rural county where snow removal is common, knows how a snowplow is operated and is able to make an analysis of what will happen where the snowplow or wing is obstructed so that it cannot move forward. The admission of opinion evidence rests largely in the discretion of the court. 32 C. J. S. p. 86; *Anderson v. Eggert* (1940), 234 Wis. 348, 291 N. W. 365. It is considered that the testimony offered was not within the field which permits evidence of expert witnesses. 32 C. J. S. p. 236; *Tiemann v. May* (1940), 235 Wis. 100, 108, 292 N. W. 612.

Defendant argues that the damages awarded to the plaintiffs are excessive. We have examined the evidence very carefully, and conclude that while in two instances the jury

awarded substantial damages for the injuries suffered, we are unable to say they are excessive.

In this case six plaintiffs joined six causes of action in one complaint. The jury awarded each of the six plaintiffs damages. Each of the six plaintiffs requested and taxed costs. Defendant claims error. Sec. 271.04, Stats., provides for the taxation of costs. This was changed in 1935 and 1937. Under the old statute plaintiff taxed costs by folio. When the statute was changed it permitted plaintiff to recover stated sums based upon the recovery. Under the old statute if six plaintiffs joined in one action they could tax costs but once. Sec. 271.04 (3), Stats. 1933. It is contended that no such drastic action was contemplated when the statute was changed.

In *Hansberry v. Dunn* (1939), 230 Wis. 626, 284 N. W. 556, this court held that where several causes of action were consolidated for trial each plaintiff could recover costs, and in *DeKeyser v. Milwaukee Automobile Ins. Co.* (1941) 236 Wis. 419, 295 N. W. 755, it was held that where separate causes of action were consolidated for trial and a defendant was successful it could recover costs from each plaintiff. The only difference between the foregoing cases and this case is that in the foregoing cases separate causes of action were commenced by each plaintiff and were consolidated for trial, while in this case all plaintiffs joined in the same complaint. It is the rule at this time that if each of the plaintiffs had commenced a separate action they could have recovered the costs which they have now taxed. To hold that they cannot do so by joining in the same complaint would necessarily mean that in the future separate causes of action would be commenced, which as the trial court has well said would be—

"in direct conflict with modern court procedure to reduce multiplicity of suits and it cannot be held that the end result of the statutes on costs is to encourage and promote a multiplic-

ity of actions in order that greater costs may be thereby obtained. Whether Irene Gospodar, John J. Gospodar, Mary Hebert, Thomas Hebert, Joyce Borchek and Michael Borchek assert their claims in separate complaints or in the same complaint, they are suing in different rights and the suits are consolidated in either event as a matter of convenience and economy in the administration of justice. Each plaintiff has a separate and distinct cause of action and full control thereof within the principle of *Hansberry v. Dunn.*"

It is considered that the trial court properly approved the taxation of costs by each plaintiff.

*By the Court.*—Judgment affirmed.

The following opinion was filed December 18, 1946:

BARLOW, J. (*on motion for rehearing*). Appellant calls attention to an error in the opinion where it is said the rear end of the truck was caused to skid by reason of the front end of the truck leaving the concrete. Where it is stated in the opinion that the truck leaving the highway caused the rear end to skid, correction is made to state that the snow shoe leaving the concrete caused the wing to drop and skid the rear of the truck.

Reference is also made to a claimed error with reference to the testimony of the officer. The officer who came to the scene of the accident testified that on examination he observed the right front wheel of the truck was off the concrete and the shoulder of the highway had been gouged. The officer further testified that the driver of the truck told him the shoe dropping off the cement caused the wing to let down and dip into the shoulder, thus causing the rear end of the truck to slide across the center of the road in front of plaintiff's car. The driver of the truck on cross-examination admitted this could have been the cause of the skidding, and the jury apparently concluded that it was the cause, refusing to adopt appellant's contention

that one shoe of the snowplow leaving the concrete could not cause the wing to drop and swerve the rear end of the truck across the center of the highway.

We find nothing in the briefs for rehearing that has not heretofore been fully argued and considered.

*By the Court.*—Motion for rehearing denied, without costs.