3301 BAY ROAD LLC, by Lisa Collyer and Michael Collyer, Robert Berman, as Trustee of the Robert J. Berman Trust, Dorrit J. Bern, Individually and as Trustee of the Dorrit J. Bern Trust, William J. Brady, as Trustee of the William John Brady Trust, Suzanne M. Brandner, as Trustee of the Suzanne M. Brandner Trust, Steven R. Brown, Carolyn K. Brown, Barton F. Cameron, George Cibon, Agi Cibon, Theodore C. Compall, as Trustee of the Theodore C. Compall Trust, Matthew Connelly, Elizabeth Connelly, Donald J. Jenkins, Laura Ann Hartigan, Fred Cutler, as Trustee of the Cutler Family Trust, Sandra Cutler, as Trustee of the Cutler Family Trust, Joseph Craig Fehsenfeld, Charles R. Goulet, as Trustee of Charles R. Goulet Trust, Walter A. Gross, as Trustee of the Walter A. Gross Revocable Trust, Carol C. Gross, as Trustee of the Carol C. Gross Revocable Trust, W. Steven Gross, as Trustee of the W. Steven Gross Trust, Michael W. Grover, Lori B. Grover, Donald J. Hamman, Carol S. Hamman, Walter D. Hardy, III, as Trustee of the Walter D. Hardy III Trust, Francine C. Inbinder, as Trustee of the Francine C. Inbinder Trust, Donald J. Kerestes, as Trustee of the Kerestes Trust No. 2005, Dorothy A. Kerestes, as Trustee of the Kerestes Trust No. 2005, Chad A. Kort, as Trustee of the Chad A. Kort and Kathy A. Kort Trust, Kathy A. Kort, as Trustee of the Chad A.

721

Kort and Kathy A. Kort Trust, John P. Larkin, Alison S. Larkin, Richard Larson, Dianna Larson, Howard J. Levin, as Trustee of the Rhonda L. Levin Trust, Rhonda L. Levin, as Trustee of the Rhonda L. Levin Trust, Gerald R. Lynch, MHM Corporation, a Wisconsin Corporation, Peter G. Maloney, Maureen P. Maloney, Don W. Matheny, as Trustee of the Don W. Matheny Trust, Janet P. Matheny, as Trustee of the Janet P. Matheny Trust, Philip L. Mattison, Jr., as Trustee of the Philip L. Mattison Jr. Trust, Carol S. McCarthy, G. Henry Mundt, III, as Trustee of the G. Henry Mundt III Trust, Elizabeth R. Mundt, as Trustee of the Elizabeth R. Mundt Trust, Mary Lorentz Ovitz, as Trustee of the Ovitz Living Trust, Gina Pellegrini, as Trustee of Trust #INIR2002-GP, Michael J. Powers, Nancy E. Powers, Harold Rider, Susan Rider, Joseph S. Rupkey, Jennifer R. Rupkey, Jose L. Salazar, as Trustee of the Jose L. Salazar Trust, Cynthia L. Salazar, as Trustee of the Cynthia S. Salazar Trust, Bank of America, N.A., a Foreign Corporation, as Trustee of the James P. Soper Jr. Trust and as Trustee of the Soper Family 2004 Trust, Dale A. Stinton, Mary Ann Stinton, Slawomir (Steve) Z. Szczepanski, Cynthia Szczepanski, Richard V. Weagley, as Trustee of the Richard V. Weagley Trust, Melinda H. White, Megan M. Plain, Matthew C. McKee, William H. Wiggs, Karen M. Wiggs, Jeffrey D. Wilder, Lisa Wilder, Robert Williamson, Sr., as Trustee of the Robert Williamson Sr. Trust and

Elena Ziehm, as Trustee of the Elena Ziehm Revocable Trust, Plaintiffs-Appellants,†

v.

TOWN OF DELAVAN, Defendant-Respondent.

Court of Appeals

*No. 2012AP2594, 2013AP148.—Submitted on briefs November 12, 2013.—Decided January 15, 2014.*

2014 WI App 18

(Also reported in 845 N.W.2d 666.)

† Petition for Review denied May 22, 2014.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Maureen A. McGinnity* of *Foley & Lardner, LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael J. Roman* of *Zalewski, Klinner & Kramer, LLP*, Wausau.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. REILLY, J.   The Town of Delavan managed to overassess more than fifty lakefront properties at the same time that it underassessed numerous "off-lake" properties, thereby violating both Wis. Stat. § 70.32 (2011–12)[1] and the constitutional tax uniformity mandate. The lake property owners (the Taxpayers) joined together and sued to recover their overpayments and further sought to rectify the injustice of the uniformity violation by requesting that their properties be assessed at forty-five percent below fair market value—the rate of underassessment of the "off-lake" properties. The court refunded the Taxpayers for the § 70.32 violation and gave them an additional three-percent refund for the uniformity violation. Not satisfied with their victory, the Taxpayers appeal for more. They also appeal the circuit court's decision to cap their expert witness fees at $300 per case, rather than at $300 per plaintiff. We affirm the court's uniformity decision as an appropriate exercise of discretion but remand for a re-examination of the expert witness fees.

## BACKGROUND

¶ 2.   The Taxpayers filed two actions seeking refunds of taxes paid on real property for 2009 and 2010 pursuant to Wis. Stat. § 74.37, claiming that their assessments were both excessive and in violation of the uniformity clause of the Wisconsin Constitution. The

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

actions were combined for trial. The Town conceded that it had violated the uniformity clause by not assessing the Taxpayers' properties below fair market value as it had for taxpayers in the Assembly Park neighborhood. Therefore, the issues for the circuit court to decide were (1) the correct fair market assessments for the Taxpayers' properties in 2009 and 2010 and (2) the remedy for the Town's uniformity violation.

¶ 3.　Following a four-day trial, the court determined that, with few exceptions, the Taxpayers' assessments were not based upon their properties' fair market values and were excessive. The court adopted the fair market values for the Taxpayers' properties presented by their appraisal expert in calculating their refund for excessive assessments. The circuit court also found that the uniformity clause violation was caused by the Town erroneously assessing parcels in the Assembly Park neighborhood at forty-five percent below their fair market values. The court declined to adopt the Taxpayers' proposed remedy of reducing their assessments to forty-five percent below their fair market values, noting the "unique" and "unprecedented" circumstances of the case. Instead, the court based the Taxpayers' refund on the amount that they would have paid in property taxes for 2009 and 2010 if the Assembly Park properties had been properly assessed.

¶ 4.　The Taxpayers also requested that each plaintiff in the 2009 and 2010 tax actions be awarded out-of-pocket costs for expert witness fees, capped at $300 per plaintiff per case for each expert who testified at the trial. The court determined that, by statute, it was limited to awarding a total of $300 per expert in each case, splitting a total of $1200 among the Taxpayers.

726

## DISCUSSION

¶ 5.   The Taxpayers appeal the circuit court's decisions pertaining to the remedy for the Town's uniformity violation and the limitation on their expert witness fees.[2] Both issues implicate the circuit court's discretionary powers.

### *Uniformity Violation*

██

¶ 6.   The circuit court has discretion to fashion a remedy for excessive assessments and uniformity clause violations, and we review such decisions for an erroneous exercise of this discretion. *See Duesterbeck v. Town of Koshkonong*, 2000 WI App 6, ¶ 31, 232 Wis. 2d 16, 605 N.W.2d 904 (1999). We will sustain a discretionary act if the circuit court examined the relevant facts, applied a proper standard of law, and came to a reasonable conclusion employing a rational process. *Rosecky v. Schissel*, 2013 WI 66, ¶ 29, 349 Wis. 2d 84, 833 N.W.2d 634.

¶ 7.   The Taxpayers contend the circuit court made an error of law by not awarding them a tax refund commensurate with a forty-five percent reduction in their assessments for the Town's uniformity clause

---

[2] During the pendency of the actions in the circuit court on the 2009 and 2010 taxes, the Taxpayers filed an action challenging their 2011 assessments on the same bases as their earlier challenges. Following the judgments in the 2009 and 2010 cases, the circuit court granted summary judgment to the Taxpayers on their 2011 tax claim, incorporating the applicable findings of fact and conclusions of law from the prior decisions. We granted the Taxpayers' motion to consolidate the appeals from the judgments in the 2009 and 2010 cases and the judgment in the 2011 property tax case. WIS. STAT. RULE 809.10(3).

violation. They argue that the supreme court's decision in *State ex rel. Levine v. Board of Review*, 191 Wis. 2d 363, 528 N.W.2d 424 (1995), "dictates" such a result. We disagree.

■

¶ 8.   *Levine* holds that a court may "*opt* to satisfy the constitutional mandate of uniformity" by reducing assessments below market value when that provides the "*only* practical means" of providing relief. *Id.* at 377–78 (emphasis added). We adopted similar language in *Noah's Ark Family Park v. Board of Review*, 210 Wis. 2d 301, 322–23, 565 N.W.2d 230 (Ct. App. 1997), another case relied on by the Taxpayers, when we "opt[ed]" to satisfy the uniformity mandate by disregarding the statutory requirement of fair market assessment. *Levine* involved a situation in which two sets of taxpayers challenged their assessments on the basis that other properties in their taxing district had been undervalued, thereby burdening them with disproportionately high taxes when their properties remained assessed at fair market value. *Levine*, 191 Wis. 2d at 367. *Noah's Ark* involved a claim by a single commercial business, which had its assessment increased based on a recent sale when other commercial entities had not been similarly reassessed. *Noah's Ark*, 210 Wis. 2d at 305–06.

¶ 9.   Here, the circuit court considered both *Levine* and *Noah's Ark* before rejecting the Taxpayers' argument that they receive a forty-five-percent decrease in their property assessments to compensate them for the three-percent tax increase caused by the underassessment of Assembly Park. The court noted that the remedy in *Noah's Ark* was to return the property assessment to its previous value by disregarding a recent sale, *Noah's Ark*, 210 Wis. 2d at 323, not by

reducing the assessment to the undermarket assessment rates of other commercial properties. The court also distinguished the circumstances present in this case from *Levine* and other prior cases as those cases involved limited numbers of plaintiffs, the Taxpayers already had received relief for their overassessments, and the Taxpayers' requested remedy would result in a "windfall reduction in their taxes way beyond what they suffered in the way of tax burden because of the underassessment in Assembly Park."

¶ 10.  The circuit court explained that its authority was discretionary in crafting its equitable remedy, *see Borgman v. Langlade Cnty.*, 165 Wis. 442, 444–45, 162 N.W. 431 (1917), to grant the Taxpayers relief by refunding the amount they overpaid due to the underassessment of Assembly Park. The court thus examined the relevant facts, applied the proper standard of law, and used a rational process to reach a reasonable conclusion. *See Rosecky*, 349 Wis. 2d 84, ¶ 29. The circuit court did not erroneously exercise its discretion in fashioning a fair remedy for the uniformity violation.

*Expert Witness Fees*

¶ 11.  The Taxpayers contend that the circuit court erred in limiting the total amount they can collect for their expert witnesses to $300 per expert per case, or $1200 in total, rather than allowing them to collect their actual out-of-pocket costs for the expert witnesses up to $300 per plaintiff. In issuing its ruling, the court indicated that it was following the statute in making its award for expert witness fees and that case law did not support the Taxpayers' argument. To the extent that

the circuit court based its decision on the belief that it could not award more than $1200, the court erred.

¶ 12. WISCONSIN STAT. § 814.02(2) provides that statutory "costs may be allowed or not . . ., in whole or in part, in the discretion of the court" to any party to a special proceeding. Expert witness fees are itemized as an allowable cost by WIS. STAT. § 814.04(2) to the extent that they do "not exceed[] $300 for each expert who testifies." When plaintiffs join together to file a single complaint, even though they could have commenced separate actions, they may recover their costs as if they had filed their complaints separately. *Gospodar v. Milwaukee Auto. Ins. Co.*, 249 Wis. 332, 339, 24 N.W.2d 676 (1946).

¶ 13. *Gospodar* guides our decision. In *Gospodar*, our supreme court held that multiple plaintiffs who join in an action may each recover costs—in that case, attorney fees—that would have been available to them had they filed separate complaints. *Id.* "Costs" as defined by the statute at the time of *Gospodar* included both attorney fees and disbursements, such as expert witness fees. *See Paulson v. Allstate Ins. Co.*, 2002 WI App 168, ¶ 60 n.10, 256 Wis. 2d 892, 649 N.W.2d 645, *rev'd on other grounds*, 2003 WI 99, 263 Wis. 2d 520, 665 N.W.2d 744. We extended *Gospodar*'s holding to apply to attorney fees for multiple plaintiffs who bring a single action in a compulsory joinder case. *Paulson*, 256 Wis. 2d 892, ¶ 61. In doing so, we reasoned that "additional plaintiffs invariably cause some amount of additional attorney work." *Id.*

¶ 14. Similar reasoning supports the Taxpayers' contention that the court may award them expert witness fees in the same manner as if they had brought separate claims. *See Allied Processors, Inc. v. Western*

*Nat'l Mut. Ins. Co.*, 2001 WI App 129, ¶ 53, 246 Wis. 2d 579, 629 N.W.2d 329. The Taxpayers' experts were required to study the unique circumstances of each property where an assessment was appealed, adding to the overall expense to the Taxpayers. The Taxpayers are not seeking more money than their actual out-of-pocket expenses. *Cf. Paulson*, 256 Wis. 2d 892, ¶ 61. Furthermore, allowing the Taxpayers to collect expert witness fees as they could have if they had filed separate actions comports with the laudable goal of reducing the amount and expense of litigation. *See Gospodar*, 249 Wis. at 339.

¶ 15.   Although the Town points out that *Paulson* limited its holding to attorney fees in compulsory joinder cases and declined to apply *Gospodar* to disbursements, we see no reason for such a distinction in this case. *Paulson* involved multiple plaintiffs seeking to multiply their recovery for disbursements several times above their actual out-of-pocket costs. *Paulson*, 256 Wis. 2d 892, ¶¶ 59–62. We refused to accept the *Paulson* plaintiffs' reading of *Gospodar* to allow such an award, based on our interpretation that WIS. STAT. § 814.04(2) limited the recovery for disbursements to actual out-of-pocket costs. *Paulson*, 256 Wis. 2d 892, ¶ 61. Our holding under these circumstances is that the Taxpayers may collect their expert witness fees in the same manner as they could collect expert witness fees had they filed separate actions, i.e., per property per tax year not to exceed the $300 cap and not to exceed the actual out-of-pocket expenses in the aggregate. It is not contrary to *Paulson*.

¶ 16.   Our holding also includes the limitation that the award of expert witness fees in this case is within the sound discretion of the circuit court per WIS. STAT.

§ 814.02(2). While Wis. Stat. § 814.04(2) provides that expert witness fees "shall be" allowed for up to $300 for each expert witness who testifies, § 814.02(2) places it squarely in the court's hands whether to award such costs in special proceedings. "A special proceeding is one where the law confers a right and authorizes a special application to the court to enforce . . . . Special proceedings are those which were not actions in law or suits in equity under common law." 1A C.J.S. *Actions* § 115 (2013). This definition applies to actions for excessive assessments. Wisconsin Stat. § 74.37, the statute under which the Taxpayers filed their claim, provides the exclusive procedure by which a taxpayer may receive a de novo trial on an excessive assessment claim. *Hermann v. Town of Delavan*, 215 Wis. 2d 370, 394, 572 N.W.2d 855 (1998). No common law action for an excessive assessment existed prior to statehood. *Metropolitan Assocs. v. City of Milwaukee*, 2011 WI 20, ¶ 54, 332 Wis. 2d 85, 796 N.W.2d 717.

¶ 17. Accordingly, we find that a de novo trial for an excessive assessment claim is a special proceeding and it is within the court's discretion whether to award expert witness fees, within the limitations of Wis. Stat. § 814.04(2), to a party in a Wis. Stat. § 74.37 special proceeding. We therefore remand to the circuit court to decide whether, in light of the facts of the case, expert witness fees "may be allowed or not" to the Taxpayers up to the amount they could have collected had they filed separate complaints rather than joining in one, i.e., per property in each case.

*By the Court.*—Judgments affirmed in part, reversed in part and cause remanded with directions.